## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SHAWN LAVON BROWN, | : | MOTION TO VACATE |
| BOP ID 63717-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:16-CV-3315-AT-CMS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
| Respondent. | : | 1:12-CR-389-1-AT-CMS |

## FINAL REPORT AND RECOMMENDATION

This matter is before me on federal inmate Shawn Lavon Brown's *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence [444], the government's response [485], and Brown's myriad additional filings [458, 470, 471, 472, 474, 481, 482, 483, 484, 486, 489, 491, 492, 493, 495, 496 & 497].[1]

---

[1] I previously reviewed and addressed a number of filings submitted by Brown and the government. *See* [462] (reviewing and addressing [447, 447-1, 447-2, 448, 449, 450, 451, 452, 453, 455, 456 & 457]); *see also* [499] (reviewing and addressing [464 & 498]).

I do not address herein Brown's "Dismissal Motion" [460] and "Motion to Strike Last Motion to Dismiss the Case" [463], nor do I address Brown's "Objection to Order" [473] and "Show Cause/Motion to Expedite Ruling/Objection to Denial Order for Show Cause" [500], which seek reconsideration of two of my orders and are appropriately resolved by the district judge. *See* 28 U.S.C. § 636(b)(1)(A).

In November 2012, a grand jury indicted Brown for conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343 (one count) and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (three counts). *See* [26].  The government charged that "the object and purpose of the conspiracy was for the Defendants to obtain payment of false claims for federal income tax refunds to which they knew they were not entitled using stolen personal identification information . . . ." *Id.* at 2.  The original indictment named eight defendants as co-conspirators and included separate substantive counts against several of them. *See id.*  Additional defendants and counts were added by superseding indictment. *See* [190].

Regina Cannon (née Stephenson) was appointed to defend Brown. *See* [2].  The government requested that Brown be held in pre-trial detention, *see* [4], and this Court entered an Order of Temporary Detention, *see* [5].  Through Cannon, Brown moved for release, which was granted. *See* [6].  The terms of Brown's release were modified twice, *see* [14 & 20], before Brown was again detained, *see* [135], for continuing his criminal activity post-indictment, *see, e.g.,* [410] at 110 & [489] at 8.

In May 2013, Brown entered into a negotiated plea agreement with the government, pursuant to which he pled guilty to Count One (conspiracy

to commit wire fraud) and Count Two (aggravated identity theft).  *See* [160-1] at 1.  The plea agreement included, *inter alia*, a "No Additional Charges" provision (insulating Brown from charges related to his post-indictment criminal conduct), a "Conditional Section 5K/Rule 35 Motion" provision, stipulations as to the loss amount and number of victims, and a limited waiver of appeal and collateral attack rights.  *See id.* at 4, 7, 8 & 12.

The Honorable Amy Totenberg held a Rule 11 hearing and accepted Brown's guilty plea, finding that he was entering it knowingly and voluntarily and that it was factually supported.  *See* [160 (minute entry) & 428 (transcript)].

In July 2014, Brown filed a *pro se* motion to dismiss and replace Cannon, *see* [315], and Albert Norton was appointed as his attorney, *see* [316].

In early March 2015, the government filed Section 5K1.1 motions on behalf of a number of Brown's co-defendants, but not Brown.  *See, e.g.*, [350, 351 & 352].  At sentencing, the government explained that this reflected Brown's continuing criminal conduct after his indictment and its own determination that Brown did not provide substantial assistance.  *See* [410] at 111.

On March 10, 2015, Judge Totenberg sentenced Brown to a 136-month term of imprisonment for conspiracy to commit wire fraud and a consecutive 24-month term of imprisonment for aggravated identity theft. *See* [373].  The Judgment also included a restitution provision, requiring that Brown repay $1,332,021.  *See id.* at 7.

Through Norton, Brown filed and amended a notice of appeal.  *See* [382 & 390].  Norton then filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), in the United States Court of Appeals for the Eleventh Circuit and moved to withdraw.  Brown filed his own *pro se* letter-briefs.

Based on its "independent review of the entire record, including Brown's responses to counsel's motion," the Eleventh Circuit concluded that Brown's appeal raised "no arguable issues of merit," granted Norton permission to withdraw, and affirmed Brown's convictions and sentence. *United States v. Brown*, 646 F. App'x 907, 907 (11th Cir. 2016).  To address a "clerical error," the Eleventh Circuit remanded "with instructions" to modify the amount of restitution in the Judgment.  *Id.*

In April 2016, Judge Totenberg re-entered Judgment, adjusting the amount of restitution due to $1,230,021.  *See* [435].

4

Brown then submitted his § 2255 motion and many additional filings. *See* p. 1, *supra*.  Because Brown is proceeding *pro se*, I have construed his filings liberally.  *See, e.g.*, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

In his reply to the government's response to his § 2255 motion, Brown has adopted almost verbatim the government's synopsis of his grounds for relief.  *Compare* [489] at 3-4 *with* [485] at 7-8.  Accordingly, I list below each of those grounds for relief, using Brown's language.

- Breach of plea agreement–Movant argues that government breached the plea agreement by not filing a § 5K1.1 motion and state[s] that his counsel, Regina Cannon, negotiated a § 5K1.1 motion despite his post-indictment criminal conduct. Movant also argues that the gov[e]rnment told counsel, Albert Norton, that a § 5K1.1 motion would be filed.

- Ineffective assistance of counsel–Movant argues that defense counsel Regina Cannon was ineffective for not challenging the application of the sentencing guidelines that resulted in an improper sentence.

- Ineffective assistance of counsel–Movant argues that defense counsel Albert [Norton] was ineffective for failing to challenge the government's alleged breach of the plea agreement and for failing to file a motion to withdraw his guilty plea after it b[eca]me apparent that the government did not plan to file a [§] 5K1.1 motion.

- Ineffective assistance of counsel–Movant argues that defense counsel Albert Norton was ineffective for failing to cite

controlling legal precedent to object to government[] counsel['s] improper arguments at the sentencing hearing.

- Ineffective assistance of counsel–Movant argues that defense counsel Albert Norton was ineffective for failing to consult the defendant before filing an *Anders* brief and for including alleged incorrect information f[]rom the government in the brief.

- Involu[n]tary Plea–Movant's final argument is that his guilty plea was under duress. Movant['s] claim[] ste[]m[s] from counsel['s] advi[c]e on him not signing the . . . plea and what the end result[] he would be facing if counsel was not able to negotiate a plea deal with the [§] 5K1.1 motion attached base[d] on his post-indictment alleged criminal conduct.

[489] at 3-4.

Ineffective assistance of counsel claims are ordinarily reviewed pursuant to the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny.

Under *Strickland*:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . .

6

> resulted from a breakdown in the adversary process that
> renders the result unreliable.

466 U.S. at 687.   And, "it is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

But there is a threshold matter this Court must consider before reaching most of Brown's ineffective assistance of counsel claims.   As I noted earlier, Brown's plea agreement includes a collateral attack waiver. *See* [160-1] at 12.   So this Court must first determine whether Brown's collateral attack waiver is enforceable.

Just as a defendant may waive his right to file a direct appeal, *see, e.g., United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993), he may also may waive his right to collaterally attack his sentence under § 2255, *see, e.g.*, *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005). Such waivers are generally enforceable if "entered into knowingly and voluntarily" and in accordance with certain procedural standards.   *See id.* It is enough that, "at the plea colloquy, the court specifically question [the defendant] concerning the specifics" of the waiver and "determine[] that he had entered into the written plea agreement . . . knowingly and voluntarily," where "[t]he plain language of the agreement informed [the defendant] that

7

he was waiving a collateral attack on his sentence." *Id.* "Under these circumstances, the . . . waiver precludes a § 2255 claim[] based on ineffective assistance at sentencing." *Id.*[2]

A defendant may sometimes avoid enforcement of an appeal or collateral attack waiver, however, by attacking his underlying guilty plea. *See generally United States v. Puentes-Hurtado*, 794 F.3d 1278 (11th Cir. 2015). Two recognized grounds for attack are (1) "that the government breached the very plea agreement which purports to bar [the defendant] from appealing or collaterally attacking his conviction and sentence" and (2) that "the plea itself is involuntary or unintelligent." *Id.* at 1284. Brown argues that both of these exceptions apply.[3]

I consider first Brown's argument that the government breached the terms of his plea agreement. "The government is bound by any material

---

[2]   Indeed, "a waiver of appeal even includes a waiver of the right to appeal 'blatant error.'" *United States v. Bascomb*, 451 F.3d 1292, 1295 (11th Cir. 2006) (quoting *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999)). And a defendant is "free to bargain away his right to raise constitutional issues, as well non-constitutional ones." *Id.* at 1297.

[3]   Brown also argues that his plea agreement is "unenforceable" because it is "unconscionable," both "procedurally" and "substantively." *See* [458] at *passim.* This argument is frivolous. Moreover, this argument is contradicted by Brown's own demand that this Court order "the government [to] provide the defendant what was agreed upon in the plea agreement." *Id.* at 6.

promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." *United States v. Horsfall*, 552 F.3d 1275, 1281 (11th Cir. 2008) (quoting *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996) (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)). To determine whether the government breached the plea agreement, a court must "determine the scope of the government's promises." *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004).

The specific provision that Brown alleges was breached related to the circumstances in which the government would file a Section 5K1.1 motion on his behalf. Brown's plea agreement stated in relevant part as follows:

**Conditional Section 5K/Rule 35 Motion**

The Government agrees to make the extent of the Defendant's cooperation known to the sentencing court. In addition, if the cooperation is completed before sentencing and the Government determines that such cooperation qualifies as "substantial assistance" pursuant to Title 18, United States Code, Section 3553(e) and/or Section 5K1.1 of the Sentencing Guidelines, the Government will file a motion at sentencing recommending a downward departure from the applicable guideline range. . . . [T]he defendant understands that the determination as to whether Defendant has provided "substantial assistance" rests solely with the Government. . . . [I]f the Defendant engages in additional criminal conduct or other conduct inconsistent with cooperation, Defendant will not be entitled to any consideration whatsoever pursuant to this paragraph.

[160-1] at 7.

Brown's argument that the government breached this provision by failing to file a Section 5K1.1 motion on his behalf has three subparts. First, Brown argues that the plain language of this provision compelled the government under all circumstances to file such a motion (*i.e.*, that the government's promise to file a Section 5K1.1 motion was unconditional). Second, Brown argues that the government promised his attorneys that it would under all circumstances file a Section 5K1.1 motion on his behalf. And, third, Brown argues that the government violated the Constitution when it refused to file a Section 5K1.1 motion on his behalf.

The first subpart of Brown's argument is belied by the language of the plea agreement itself. The provision is specifically labeled "conditional" and it specifically provides that "the defendant understands that the determination as to whether Defendant has provided 'substantial assistance' rests solely with the Government." [160-1] at 7. Contrary to Brown's argument, the government did not make and then breach an unconditional promise to file a Section 5K1.1 motion on his behalf.[4]

---

[4] To the extent that Brown also contends that the government breached the terms of the plea agreement by failing to apprise the Court during his sentencing hearing of the extent of his cooperation, this claim is

The second subpart of Browns' argument is also belied by the record and contradicted by copies of contemporaneous notes kept by Brown's attorneys that he has submitted as exhibits. When Albert Norton told the Court that it was his understanding that the government would file a Section 5K1.1 motion on Brown's behalf, he stated "I heard it through Mr. Brown." [410] at 98. And the copies of notes prepared by Cannon and Norton that reflect their understanding of the plea agreement are clear that both of them understood that the Section 5K1.1 provision was conditional and not guaranteed. *See, e.g.*, [481] at 5 (Cannon's notes summarizing "terms of agreement" as including "5K1 potential"); [489-1] at 17 (Norton's calculations of four possible sentencing outcomes that either left a blank or stated "0" on the line labeled "5K"). In short, nothing from Brown's former attorneys corroborates his present claim that the government conveyed to either of them a promise outside the written terms of the plea agreement unconditionally guaranteeing that a Section 5K1.1 motion would be filed on his behalf.

---

also belied by the record of prior proceedings, which includes testimony from a government witness stating the nature and scope of Brown's cooperation. *See* [410] at 33-35 & 71-73. It is noteworthy that Brown has not identified in his § 2255 motion or later filings  any specific type or instance of cooperation that the government did not describe or disclose.

Moreover, at the Rule 11 hearing, when the plea agreement's terms were reviewed with Brown, he acknowledged under oath that no promises not included in the plea agreement (*e.g.*, an unconditional Section 5K1.1 motion) had been made to induce him to plead guilty. [428] at 17. Brown's contrary claim now, supported by no evidence save his own statements, is entitled to no weight. *See, e.g., Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) ("his self-serving statements appear to be a last-minute attempt to escape the preclusive effect of the appeal waiver").

The third subpart of Brown's argument is also meritless. Here, Brown argues that this Court should conclude that the government's refusal to file a Section 5K1.1 motion on his behalf reflected an unconstitutional motivation. While the Supreme Court has held that a defendant "would be entitled to relief if the prosecutor's refusal to move was not rationally related to any legitimate Government end" and that "a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion," it has also stated that "a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing[, nor] would additional but generalized allegations of improper

12

motive." *Wade v. United States*, 504 U.S. 181, 186 (1992).  Because Brown does not claim that the government withheld a Section 5K1.1 motion on the basis of his race or religion, and because he makes only "generalized allegations of improper motive," he has not sufficiently alleged a breach of his plea agreement to be entitled to relief on this basis, either.

Brown also argues that his collateral attack waiver should not be enforced because his entry into the plea agreement was involuntary and unknowing.   This argument also has multiple subparts, which I will consider in turn.

Brown contends that his guilty plea was involuntary because he was under "duress."  *See, e.g.*, [444] at 7.  "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493 (1962).  Brown's § 2255 motion, however, does not identify the source or nature of any "duress." *See* [444] at *passim*. Brown's reply to the government's response adds only slight additional detail, tying the claim of "duress" to Cannon's allegedly "misleading" advice and claiming that she "coer[]ced the movant into signing the agreement for his benefit which deprived the movant of his free will."  [489] at 9-10.

Again, however, Brown acknowledged under oath at his Rule 11 hearing that his entry into the plea agreement was voluntary and free of coercion, and Judge Totenberg accepted his plea. *See* [428] at 17 (affirming that no one "threatened, pressured, forced or intimidated [him] or someone [he is] close to to persuade [him] to plead guilty") & 18 (affirming that the "guilty plea [was] voluntary and of [his] own free will."). And "the representations of the defendant . . . at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).

Furthermore, the plea agreement that Brown signed reflected that he was entering into it voluntarily. *See* [160-1] at 14 ("[n]o one has threatened or forced me to plead guilty"). And it is noteworthy that Brown waited more than three years after entering into his plea agreement to claim he was under "duress" and "coerced."

In similar circumstances, the Eleventh Circuit has held that a movant's belated, self-serving, and conclusory allegations of duress or coercion are inadequate to warrant a finding that his plea was involuntary or even to warrant an evidentiary hearing. *See Winthrop-Redin v. United*

*States*, 767 F.3d 1210, 1216-17 (11th Cir. 2014).  Brown is not entitled to relief on this basis.

Brown's fallback argument is that his plea was unknowing and involuntary because Cannon misled him about the consequences of his guilty plea.  "During plea negotiations defendants are 'entitled to the effective assistance of counsel.'"  *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  Consequently, "a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because [her] advice was outside 'the range of competence demanded of attorneys in criminal cases.'"  *United States v. Munguia-Ramirez*, 267 F. App'x 894, 897 (11th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985)).  So this claim, at least, requires consideration of whether Cannon provided ineffective assistance in connection with the negotiation and entry of Brown's guilty plea.

Brown asserts that Cannon provided ineffective assistance because she was "ignoran[t] of the Sentencing Guidelines in the guilty plea context" and this resulted in "impermissible double counting."  [444] at 4; *see also* [481] at 1 ("if Mrs. Cannon carefully reviewed the charges she would have

15

noticed that her client is being Double Counted"). And Brown asserts that Cannon provided ineffective assistance because she provided "misleading" information about the government's intention to file a Section 5K1.1 motion. *Id.* at 7; *see also* [485] at 12.

The second suppart of Brown's ineffective assistance of counsel claim is meritless for the reasons that have already been discussed above. There is no evidence, save for Brown's self-serving statements, that Cannon told him the government made an unconditional promise to file a Section 5K1.1 motion on his behalf, and there is considerable evidence in the plain language of the plea agreement and in Cannon and Norton's notes that the government's promise was conditional, with the government retaining sole discretion to decide whether to file a Section 5K1.1 motion on Brown's behalf. *See* pp. 10-11, *supra.* Thus, Brown is not entitled to relief on this basis.

The first subpart of Brown's ineffective assistance of counsel claim turns on the merit of the Sentencing Guidelines issue about which Brown claims Cannon was "ignorant," namely, her alleged failure to notice that he was being "double counted." This issue was specifically flagged for the Eleventh Circuit and discussed at length in Norton's *Anders* brief. *See*

Appellant's *Anders* Brief dated May 26, 2015, at 6-12, in *United States v. Brown*, No. 15-11063 (11th Cir. 2015).  Furthermore, Brown himself flagged it and discussed it further in at least two pro se letter-briefs.  *See* Letter dated Jan. 4, 2016, in *id.*; Letter dated May 29, 2015, at *passim*, in *id.* (attaching a copy of *United States v. Reese*, 36 F. Supp. 3d 354 (S.D.N.Y. 2014)).

Based on its "independent review of the entire record, including Brown's responses to counsel's motion," the Eleventh Circuit concluded that Brown's appeal raised "no arguable issues of merit."  *United States v. Brown*, 646 F. App'x 907, 907 (11th Cir. 2016).  This is sufficient to conclude that the Eleventh Circuit considered and determined that Brown's sentencing guidelines claim was not even "arguable."  Thus, Cannon did not render ineffective assistance of counsel with respect to this sentencing guidelines issue because "it is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance."  *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).  Consequently, this part of Brown's attack on his underlying guilty plea is also meritless.

Because Brown has not alleged facts or pointed to evidence sufficient to overcome his sworn testimony at the Rule 11 hearing with respect to the

knowing and voluntary nature of his plea or offered non-conclusory support for his claim that the government breached his plea agreement, I conclude that the collateral attack waiver in his plea agreement is enforceable and should be enforced.  Consequently, no discussion of Brown's four additional ineffective assistance of counsel claims is required. *See, e.g.*, *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) ("Under these circumstances, the sentence-appeal waiver precludes a § 2255 claim[] based on ineffective assistance at sentencing.").

For the reasons stated above, I **RECOMMEND** that Brown's § 2255 motion be **DENIED**.

I further **RECOMMEND** that Brown be **DENIED** a Certificate of Appealability because he does not meet the requisite standard.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (requiring a two-part showing (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," *and* (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"); *see also Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) (holding that the *Slack v. McDaniel* standard will be strictly applied prospectively).

No evidentiary hearing is required because "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief . . . ."  28 U.S.C. § 2255(b).  *See also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the affidavits submitted by [the defendant] amount to nothing more than mere conclusory allegations, the district court was not required to hold and evidentiary hearing on the issues and correction denied [the defendant's] § 2255 motion."); *Holmes v. United States*, 826 F.3d 1545, 1553 (11th Cir. 1989) ("this rule does not require that the district court hold an evidentiary hearing every time a § 2255 petitioner simply asserts a claim of ineffective assistance of counsel").

Finally, I **DENY** all motions contained within Brown's additional filings because all issues raised therein are resolved or mooted by the recommendations I have made above.

I **DIRECT** the Clerk to terminate the referral of this case to me.

**SO RECOMMENDED, ORDERED, AND  DIRECTED**, this 30th day of April, 2018.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE